**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SUSAN WINGET, | |
| Plaintiff, | |
| v. | Civil Action No. 2:25-cv-1606 |
| SCHEDULE A DEFENDANTS, | |
| Defendants. | |

**<u>MEMORANDUM ORDER OF COURT</u>[1]**

Robert J. Colville, United States District Judge

## I.    Background

In the above-captioned action, Plaintiff Susan Winget brings a claim for copyright infringement against a number of Defendants, who, as alleged, "reside in the People's Republic of China or other foreign jurisdictions."[2]  ECF No. 1 at ¶ 24.  Plaintiff asserts that the Defendants are utilizing the online marketplaces Amazon, Temu, and Walmart to illegally sell unauthorized copies or derivative works of Plaintiff's copyrighted works.  ECF No. 10 at 1.  According to Plaintiff,

---

[1] The Court notes that this Memorandum Order is, in many respects, substantively consistent with, if not identical to, other Memorandum Orders entered in similar "Schedule A" cases contemporaneously herewith.  The same is not a result of a lack of individualized consideration by the Court, but rather simply by the fact that, at least within this Court's experience, Plaintiff's counsel's filings in Schedule A cases contain similar, if not identical, allegations, assertions, and arguments, and, at times, are or what can fairly be described as "cut and paste" or "cookie cutter" filings.  Plaintiff in this case has three such cases pending before the undersigned, each of which has at least one "crossover" copyright that is at issue in one of the other cases, and Plaintiff's counsel represents plaintiffs in four other similar cases that the Court will address contemporaneously herewith.  The Court does not intend to be critical of appropriate efforts toward efficiency, but notably, Plaintiff's counsel's filings in the cases the Court addresses at this time, with the exception of one case where the plaintiff failed to file any supporting documents, always include substantively identical 34-page briefs (including identical two-page tables of contents and nine-page tables of authorities), substantively or entirely identical exhibits in support, a motion for alternative service, and a motion to exceed page limit.  The Court further notes Plaintiff's incorrect statement that "[a] request for judicial notice" had or would be filed at this docket number.  ECF No. 10 at 6.

[2] The 198 Defendants are identified in "Schedule A" of the Complaint (ECF No. 13), hence the Court's reference to this case as a "Schedule A case."

"Defendants conduct business, offer for sale, and, on information and belief, have sold and continue to sell the infringing works throughout the United States, including in Pennsylvania and this Judicial District."  ECF No. 10 at 5.  With respect to the alleged connection between the Defendants, Plaintiff explains as follows:

> Defendants are a collection of foreign, anonymous, and sophisticated sellers on the Amazon, Temu, and Walmart online marketplaces, operating under seller identities and/or online marketplace accounts as set forth in Schedule "A" to the Complaint. Defendants, upon information and belief, are an interrelated group of infringers working in active concert and have communicated, cooperated, shared information, and coordinated their efforts to create an infringing marketplace operating in parallel to Plaintiff's legitimate marketplace.  Defendants share unique identifiers, such as design elements and similarities among unauthorized products, establishing a logical relationship that suggests they are operating cooperatively throughout the supply chain.  Defendants use aliases to avoid liability, going to great lengths to conceal their identities and the full extent of their intertwined, illegal operation. This allows Defendants to offer the infringing works at a price lower than the Susan Winget Works.

ECF No. 10 at 4-5 (footnotes omitted).[3]

In addition to the Complaint (ECF No. 1) in this matter, Plaintiff has filed: (1) a Motion (ECF No. 9) seeking: (a) a temporary restraining order ("TRO"), (b) an order restraining Defendants' assets and storefronts, (c) an order to show cause as to why a preliminary injunction should not issue, and (d) an order authorizing expedited discovery ("TRO Motion"); (2) a Brief in Support of the TRO Motion (ECF No. 10); (3) a Motion seeking an order permitting Plaintiff to serve the Defendants via email and online publication (ECF No. 11); (4) the Declarations of Plaintiff Susan Winget (ECF No. 9-2), Plaintiff's Counsel, Stanley Ference III (ECF No. 9-3), and Dee Odell (ECF No. 9-7); (5) various exhibits, including screenshots from Amazon, Temu, and

---

[3] The similarity of the filings in Schedule A cases as described at footnote 1 is, in part, exemplified by this language that appears in each of the briefs Plaintiff's counsel has submitted in the other cases the Court addresses contemporaneously herewith.  While the allegations are identical, each of those cases does not enjoy identicality of parties.

Walmart; (6) a Motion to Exceed Page Limit (ECF No. 12);[4] and (7) Schedule A (ECF No. 13) to the Complaint.[5]  Plaintiff seeks to enjoin Defendants from continuing their alleged infringement of Plaintiff's U.S. Copyrights.  Plaintiff also requests a temporary restraint of the Defendants' assets.  For the reasons that follow, the Court will deny Plaintiff's requests for a TRO, an order restraining Defendants' assets and storefronts, an order to show cause as to why a preliminary injunction should not issue, and an order authorizing expedited discovery.

## II.      Applicable Legal Standards

### A.  Preliminary Injunctive Relief

With respect to the standard for the issuance of a preliminary injunction, the United States Court of Appeals for the Third Circuit has explained:

The decision to issue a preliminary injunction is governed by a four-factor test:

> To obtain an injunction, the plaintiffs had to demonstrate (1) that they are reasonably likely to prevail eventually in the litigation and (2) that they are likely to suffer irreparable injury without relief.  If these two threshold showings are made the District Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendants] more than denying relief would harm the plaintiffs and (4) whether granting relief would serve the public interest.

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013) (quoting *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002)).  The requirements for a temporary restraining order are the same as those for a preliminary injunction.  *Saluck v. Rosner*, C.A. No. 98-5718, 2003 WL 559395, at *2 (E.D. Pa. Feb. 25, 2003).  "Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'"  *Kos Pharms.,*

---

[4] As noted, Plaintiff has already filed her brief, and the Court has reviewed it in its entirety.  Accordingly, the Motion to Exceed Page Limit is granted.

[5] ECF Nos. 9, 11, 12, and 13 were filed under seal pursuant to a Court order permitting the same.

*Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." *Kos Pharms.*, 369 F.3d at 708 (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990)). The court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65 (a)(1).

### B. Personal Jurisdiction

Under the Federal Rules of Civil Procedure, district courts are authorized to exercise personal jurisdiction over non-residents to the extent permissible under the law of the state in which the district court is located. Fed. R. Civ. P. 4(e); *North Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990). In exercising personal jurisdiction, the court must first ascertain whether jurisdiction exists under the forum state's long-arm jurisdiction statute and then determine whether the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment to the Constitution. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 489-90 (3d Cir. 1985). This inquiry has been collapsed in Pennsylvania, as the Pennsylvania long-arm statute provides that: "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Van Buskirk*, 760 F.2d at 490. The reach of the Pennsylvania long-arm statute is thus "coextensive" with the due process clause. *North Penn Gas*, 897 F.2d at 690. The due process clause permits the court to assert personal jurisdictional over a nonresident defendant who has "certain minimum contacts with [the forum] such that the

4

maintenance of [a] suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) [defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). The "paradigm" forums where a corporate defendant is at home are the corporate defendant's place of incorporation and its principal place of business. *BNSF Ry. Co.*, 137 S. Ct. at 1558 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19). General jurisdiction has not been established in this case.

Specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant 'should reasonably expect being haled into court'" in that forum. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Inc.*, 75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The Third Circuit has explained the three-part analysis for specific jurisdiction. "First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor*

*v. Sandy Lane Hotel,* 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).  To find that a

plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state, the Third

Circuit requires "a closer and more direct causal connection than that provided by the but-for test."

*Id.*  However, the required causal connection is looser than the tort concept of proximate causation.

*Id.* (citing *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 99-100 (3d. Cir. 2004)).  The appropriate

analysis is fact-intensive, focusing on the "reciprocity principle upon which specific jurisdiction

rests" -- whether the defendant received the benefits and protections of a state's laws to the extent

that it should, as a quid pro quo, submit to the burden of litigation in the state.  *Id.* at 323.

As noted, each of the Defendants is alleged to be a foreign entity.  Federal Rule of Civil

Procedure 4(k)(2) provides:

> (2) Federal Claim Outside State-Court Jurisdiction.  For a claim that arises under
> federal law, serving a summons or filing a waiver of service establishes personal
> jurisdiction over a defendant if:
>
>> (A) the defendant is not subject to jurisdiction in any state's courts of
>> general jurisdiction; and
>>
>> (B) exercising jurisdiction is consistent with the United States Constitution
>> and laws.

Fed. R. Civ. P. 4(k)(2).  Accordingly, in order for a court to exercise personal jurisdiction over a

foreign defendant pursuant to Fed. R. Civ. P. 4(k)(2):

> (1) there must be a claim arising under federal law; (2) the defendant must be
> beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the
> defendant must have sufficient contacts with the United States as a whole so that
> the court's exercise of personal jurisdiction over the defendant comports with the
> due process requirements of the Constitution or other federal law.

*Skold v. Galderma Labs., L.P.*, 99 F. Supp. 3d 585, 603 (E.D. Pa. 2015).  "Rule 4(k)(2) was adopted

to ensure that federal claims will have a U.S. forum if sufficient national contacts exist."  *Synthes*

*(U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1295 (Fed. Cir. 2009)

(citing Fed. R. Civ. P. 4(k)(2) advisory committee notes to 1993 amendment).

### C. Joinder

Federal Rule of Civil Procedure 20, which addresses permissive joinder of parties, provides

as follows with respect to joinder of plaintiffs:

Persons may join in one action as plaintiffs if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1).  While misjoinder is not a ground for dismissal of a case, the Court may,

on motion or on its own, add or drop a party or sever any claim against a party at any time on just

terms.  Fed. R. Civ. P. 21.

"[S]everance under Rule 21 creates independent actions resulting in separate judgments[,]"

and is appropriate when the plaintiffs' claims "are 'discrete and separate,' each capable of

resolution without dependence or effect on the other."  *Henderson v. Mahally*, 639 F. Supp. 3d

481, 486 (M.D. Pa. 2022).  While the United States Court of Appeals for the Third Circuit "has

not established specific parameters for deciding a motion to sever claims[,]" district courts often

consider:

> (1) [W]hether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence.

*Henderson*, 639 F. Supp. 3d 486-87.  Where the plaintiffs do not meet the standard for permissive

joinder under Rule 20, "[t]he proper remedy is to grant severance or dismissal to the improper

party if it will not prejudice any substantial right." *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972).

### III.    Analysis

As to the first requirement for the issuance of preliminary injunctive relief, likelihood of success on the merits, a plaintiff must show that there exists "a reasonable chance or probability[] of winning." *Xie v. GUANHE Home essentials*, No. 2:25-CV-00265, 2025 WL 1039233, at *2 (W.D. Pa. Apr. 8, 2025) (quoting *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 256 (3d Cir. 2020)). The Court finds that two barriers stand in the way of Plaintiff's ability to show a likelihood of success in this case, specifically personal jurisdiction and misjoinder. The Court will address the issues in that order herein, but notes that the present Memorandum Order will only, at this time, and in the interests of judicial efficiency and economy,[6] direct Plaintiff to show cause as to why Plaintiff's claims should not be severed for misjoinder and as to why all but one of the Defendants should not be dismissed without prejudice. After the Court has resolved the issue of potential misjoinder, it will, if and when appropriate, address the issue of potential dismissal for lack of personal jurisdiction of the Defendants, individually, and more fulsomely.

### A.  Personal Jurisdiction

With respect to personal jurisdiction, "[b]ecause Plaintiff will ultimately have to establish personal jurisdiction by a preponderance of the evidence, the precise question before the Court is whether Plaintiff has established 'a reasonable probability' that [Plaintiff] will be able to establish personal jurisdiction by a preponderance of the evidence." *Xie*, 2025 WL 1039233, at *2 (citing

---

[6] Resolution of the issue of personal jurisdiction would require an analysis as to whether each of the 198 Defendants purposefully availed itself of the privilege of conducting activities in this District, whereas the issue of misjoinder involves a more holistic review of the Complaint's allegations about the Defendants' interrelatedness. Should this Court sever Plaintiff's claims and dismiss all but one Defendant without prejudice, the Court can then address personal jurisdiction as to the sole remaining Defendant in this case, and as to any of the individual Defendants that Plaintiff chooses to file individual suits against.

*Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 167 (3d Cir. 2012)). "In the context of e-commerce, 'the mere operation of a commercially interactive web site'—even if accessible in the relevant forum—is insufficient to establish minimum contacts and therefore personal jurisdiction." *Xie*, 2025 WL 1039233, at *2 (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)). Rather, the plaintiff must show that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state "by directly targeting its website to the state, knowingly interacting with residents of the forum state via its website, or through sufficient other related contacts." *Id*.

At this juncture and on this record, Plaintiff has not met her burden of establishing a reasonable probability that she will eventually be able to establish personal jurisdiction over the Defendants by a preponderance of the evidence. Initially, the Court rejects any argument by Plaintiff that the maintenance of a commercial website through which Defendants advertise and sell products worldwide, including in Pennsylvania, alone is sufficient to establish minimum contacts. *See Xie*, 2025 WL 1039233, at *4 ("[T]he operation of an online storefront from which Pennsylvania residents can make purchases if they so choose—standing alone—is insufficient to establish minimum contacts with Pennsylvania."). Plaintiff is, frankly, equivocal as to which Defendants have shipped their products into this District, at times asserting that all Defendants did so and at others, in particular in the Odell Declaration meant to bolster Plaintiff's TRO request, utilizing the precise equivocal "and/or" language that this Court has found to be inadequate to sufficiently plead purposeful availment. *Compare* ECF No. 1 at ¶ 3 ("This Court has personal jurisdiction over each Defendant because they have purposefully directed and expressly aimed their tortious activities at the Commonwealth of Pennsylvania and established sufficient minimum contacts with Pennsylvania by, among other things, upon information and belief, advertising *and*

9

*selling* infringing products bearing Plaintiffs copyrighted designs *to consumers within Pennsylvania* through a highly interactive commercial. website . . . ." (emphasis added)); *with* ECF No. 1 at ¶ 34 ("Each Defendant was, and is currently, offering for sale and selling the Infringing Products to the consuming public via Defendants' online storefronts using their Seller IDs. Defendants provide shipping, have actually shipped, *and/or* stand ready, willing, and able to ship the Infringing Products to customers located within this Judicial District." (emphasis added)); *id.* at ¶ 33 ("Each Defendant Internet Store *offers shipping* to the United States, including Pennsylvania, and, on information and belief, each Defendant *has offered* to sell Infringing Products into the United States, including Pennsylvania." (emphasis added)); ECF No. 9-7 at ¶ 2 ("In making this declaration, I represent the collective effort of a team of researchers for Ference & Associates, including myself, who conducted an investigation to determine if the identified Defendants were and/or are currently *offering for sale and/or selling* Infringing Products and whether each of the identified Defendants *will ship and/or has actually shipped* infringing Products to the United States, including customers specifically located in Pennsy1vania." (emphasis added) (footnote omitted)); *id.* at ¶ 4 at ("The checkout pages or order forms for the Infringing Products confirm that each Defendant *was and/or is still currently offering for sale and/or selling* Infringing Products through their respective Merchant Storefronts and User Accounts and that each Defendant *provides shipping and/or has actually shipped* Infringing products to Pennsylvania *and other locations throughout the United States*." (emphasis added)).

In this way, Plaintiff's Complaint is, at best, internally inconsistent, and it bears noting that the equivocal language described above is much more prevalent, including in Plaintiff's averments in support of personal jurisdiction. The use of "and/or" must allow for the possibility of the "or" option, meaning that Plaintiff has essentially stated that Defendants are subject to personal

jurisdiction merely because they offer their products for sale in Pennsylvania on an online storefront. This Court is aware of no authority allowing for the same. *See Xie*, 2025 WL 1039233, at \*2. As noted, maintenance of a nationally or globally available online storefront that merely advertises or offers products for sale to customers in Pennsylvania is not sufficient to establish minimum contacts.

Given the nature of her pleadings and arguments, it is, quite frankly, completely unclear whether Plaintiff intended to allege that each and every Defendant sold and shipped products into the Western District of Pennsylvania. Plaintiff's arguments and most of her averments tend to indicate that she did not, or at least that she believes that it does not matter whether she did or not. Plaintiff is represented by sophisticated and experienced counsel, who is more than capable of clearly pleading the basis for personal jurisdiction in this case. If, on information and belief, Plaintiff believed that each and every Defendant had sold products into this state, Plaintiff should have so stated, and done so consistently and unequivocally. In light of the above, the Court cannot find that Plaintiff has established a reasonable probability that she will be able to establish personal jurisdiction as to all individual Defendants by a preponderance of the evidence. *See FORCEL MEDIA LIMITED, Plaintiff, v. DecYI, et al., Defendants.*, No. 2:25-CV-750, 2025 WL 1665586, at \*2 (W.D. Pa. June 12, 2025) ("Without a showing that sales and shipments of Defendants' infringing products at issue here were made to Pennsylvania, the Court would not be satisfied that personal jurisdiction exists.").

The Court further notes that the attachments submitted in support of Plaintiff's TRO request are not evidence of sales, but rather screenshots of online shopping carts that indicate that the Defendants would ship to Pittsburgh, Pennsylvania if an order were placed. They are not receipts, and, again, the Court believes that these images are indicative of Plaintiff's belief that

11

maintaining an online storefront that could allow shipment to this District alone would be sufficient to establish jurisdiction. Again, it is not. *See Xie*, 2025 WL 1039233, at *4. Even if these documents were all receipts for purchases by a Pennsylvania customer, it is not clear to this Court that these screenshots were not merely produced, by Plaintiff or counsel, for purposes of artificially manufacturing jurisdiction. Such a practice is insufficient to establish personal jurisdiction:

> Moreover, the screenshots attached to the complaint do not reflect that these are arms-length sales. If [plaintiff] or its counsel or agents simply ordered these products to create personal jurisdiction, that doesn't work. *See Nifty Home Prods. Inc. v. Ladynana US*, No. 23-1332, 2024 WL 4987245, at *3 (3d Cir. Dec. 5, 2024) (finding, in context of review of district court's denying motion to vacate default judgment, a "colorable argument" that single sale from each defendant into Pennsylvania—set up by plaintiff in each instance—was insufficient to show purposeful availment); *Toys "R" Us, Inc.*, 318 F.3d 446 at 454-55 (two sales orchestrated by the plaintiff insufficient to establish personal jurisdiction because these two sales "appear to be the kind of 'fortuitous,' 'random,' and 'attenuated' contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction"); *Herbal Brands, Inc. v. Photoplaza, Inc*., 72 F.4th 1085, 1095 (9th Cir. 2023) (finding personal jurisdiction over defendants using their Amazon storefronts to make sales to residents in forum state, but requiring that such sales "must occur in the defendant's regular course of business").

*FORCEL MEDIA*, 2025 WL 1665586, at *2. In short, Plaintiff has not established a reasonable probability that she will be able to establish, by a preponderance of the evidence, that all of the Defendants are subject to personal jurisdiction in Pennsylvania under 42 Pa.C.S.A. § 5322.

Plaintiff likewise fails to make a sufficient showing that she will be able to establish personal jurisdiction by a preponderance of the evidence under Rule 4(k)(2) as to all Defendants. Under that Rule, a plaintiff must establish that the defendant is beyond the jurisdictional reach of any state court of general jurisdiction. Given the general allegations in Plaintiff's Complaint respecting sales into the United States, it seems entirely likely that many of the Defendants, if not all of them, would be subject to jurisdiction in at least one other forum. While it is not clear that Pennsylvania is an appropriate forum, it is equally unclear, on this record, that Plaintiff is likely to

12

establish by a preponderance of the evidence that each of the Defendants is beyond the jurisdictional reach of any other state.  Given that this is a threshold issue, the Court finds that the issuance of a TRO or an order directing Defendants to show cause as to why a preliminary injunction should not issue is not appropriate at this time.

**B.  Joinder**

Even if Plaintiff had made a sufficient showing of personal jurisdiction at this juncture, the Court agrees with the analysis set forth in the Memorandum Order entered by the Honorable J. Nicholas Ranjan in *FORCEL MEDIA*, wherein he discussed sincere concerns respecting misjoinder in a similar Schedule A case.  *See FORCEL MEDIA*, 2025 WL 1665586, at *2-4.  In that case, Judge Ranjan explained:

> The Court questions the propriety of joinder of 103 defendants under Rule 20.  Rule 20(a)(2) allows a plaintiff "to join all defendant sellers in one action if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences."  *Viking Arm AS v. P'hips & Unincorporated Ass'ns Identified on Schedule A*, No. 24-1566, 2024 WL 2953105, at *1 (N.D. Ill. June 6, 2024).  Under Rule 21, the Court "may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.
>
> As courts in the Northern District of Illinois have "time and again" held in the context of similar Schedule A cases, "it is not enough for a plaintiff to simply allege that multiple defendants have infringed the same patent or trademark to meet Rule 20's requirements."  *Estee Lauder Cosms. Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 187 (N.D. Ill. 2020).  This is because, absent some sort of connection among the defendants, "one defendant's alleged infringement does not arise out of the same transaction, occurrence, or series of transactions of occurrences as another defendant's unrelated infringement."  *Id.*

*FORCEL MEDIA*, 2025 WL 1665586, at *2.

"It is well established . . . that 'simply committing the same type of violation in the same way does not link defendants together for the purposes of joinder.'"  *Viking Arm AS v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 24 C 1566, 2024 WL 2953105, at *2 (N.D. Ill. June 6, 2024) (quoting *Bose Corp. v. P'Ships & Unincorporated Ass'ns Identified on*

13

*Schedule A*, 334 F.R.D. 511, 514 (N.D. Ill. 2020)).  The generally pled joinder allegations in this case are conclusory assertions unsupported by sufficient facts.  *See FORCEL MEDIA*, 2025 WL 1665586, at *3.  The Court is, on this record, unconvinced that there is a connection between the Defendants, let alone one that is shared by all of them.  As noted in *FORCEL MEDIA*, courts in the Northern District of Illinois have routinely rejected arguments such as those raised by Plaintiff in support of joinder in this case.  *See id.* ("[E]xperience has shown that, while some individual defendants may operate several online stores, and while some individual defendants may coordinate with other defendants before or after the filing of the infringement action, rarely, if ever, have all defendants named in a Schedule A case worked together." (quoting *Dongguan Juyuan Precision Tech. Co., Ltd. v. The P'ship and Unincorporated Ass's Identified on Schedule A*, No. 24-cv-11301, ECF 5 at 1 (N.D. Ill. Nov. 4, 2024))).  Similarly, the Court finds that the exhibits attached to Plaintiff's filings are not sufficient to support an inference that there exists any specific relationship between all 198 of the Defendants.  *Id.*

While the Court acknowledges a (fairly remote) possibility that some of the Defendants might be connected in some fashion such that they could be sued in groups, it defies credulity, the general tenets of the case law discussed above, and, frankly, logic to assert that each of the 198 Defendants in this case is somehow related and contributing to the other's copyright infringement, particularly where four separate copyrighted works are at issue in this case.[7]  Plaintiff simply fails

---

[7] It is, frankly, telling that Plaintiff alleges as follows in support of her joinder allegations:

> Through their operation of the Defendant Merchant Storefronts, Defendants are directly and personally contributing to, inducing, and engaging in the sale of Infringing Products as alleged, *often times* as partners, co-conspirators, and/or suppliers.  Upon information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

ECF No. 1 at ¶ 27 (emphasis added).  The use of the term "often times" tends to belie the next sentence's assertion that all of the Defendants are interrelated and working in active concert.

14

to allege a factual basis for any connection between *these specific Defendants*, and thus fails to posit a plausible theory for joinder in the Complaint outside of boilerplate and conclusory allegations of a link between the 198 Defendants and citations to reports that suggest that organized crime is likely to play a role in infringement.  It is not enough for joinder purposes that Defendants infringe the same work in the same way, and the similarities in their online storefronts point as much to "copycat" infringement as to concerted action.  *See Glitch Prods. Pty Ltd v. BaiHeShangMao*, No. 2:25-CV-00727-CCW, 2025 WL 1899266, at *3 (W.D. Pa. July 1, 2025) ("While the hundreds of pages of screenshots of Defendants' online storefronts do show some similarities in how infringing products are offered for sale, 'counterfeiters copying the marketing and advertising on similar websites simply does not establish a logical relationship between every Defendant[.]'" (quoting *Viking Arm AS v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 24 C 1566, 2024 WL 2953105, at *3 (N.D. Ill. June 6, 2024))).

 Again, Plaintiff includes no specific allegations as to *these 198 Defendants' connection*. For these reasons, Plaintiff cannot establish a reasonable likelihood of success in this matter due to this fatal flaw in her attempt to join the named Defendants, and the Court, on this basis, believes that severance and dismissal of all of the Defendants except for the first-named Defendant is the most appropriate path forward.  That said, Plaintiff will be afforded an opportunity to show cause as to why her claims should not be severed and dismissed as to all but the first-named Defendant without prejudice to Plaintiff proceeding individually as to each dismissed Defendant.  In responding to this Court's show cause order, Plaintiff is directed to address the Court's holdings in its contemporaneous decision in *Qian v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A to the Complaint*, 2:25-cv-184-RJC (ECF No. 54, W.D. Pa. June 9, 2026), which discussed the Third

Circuit's recent holding in *Wood v. Eiazuiks, et al.*, No. 25-2340, 2026 WL 1397312 (3d Cir. May 19, 2026).

The Court further notes that, "even where joinder is permissible under Rule 20, a Court may exercise its discretion to sever or drop defendants if it concludes that doing so would further the interests of judicial economy without prejudice to any party." *FORCEL MEDIA*, 2025 WL 1665586 at *4 (quoting *Malibu Media, LLC v. Surgent*, No. 12-3905, 2013 WL 1704289, at *2 (D.N.J. Apr. 19, 2013)).  The Court again agrees with Judge Ranjan's holding in *FORCEL MEDIA* that "allowing joinder in this case would undermine judicial economy, is not in the interest of justice, and hampers the Court's ability to conduct meaningful review of the merits of the case," and finds that it is equally true in this case involving 198 seemingly unrelated Defendants.  In short, Plaintiff has not established a likelihood of success in this case because it appears that the Defendants cannot and/or should not be joined in this matter.

Finally, the Court finds that the balancing of the equities factor does not support the issuance of a TRO on this record.  "[W]ith regard to allegations of copyright infringement, irreparable harm may be presumed to follow from an invasion of the 'right to the exclusive use of the copyrighted material.'" *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp. 2d 539, 573–74 (E.D. Pa. 2005).  Accordingly, Plaintiff has sufficiently established irreparable harm, at least at this stage of the proceedings.

That said, "[t]he more likely a plaintiff is to succeed on the merits, the less the balance of the equities needs to tip in her favor." *Xie*, 2025 WL 1039233, at *10.  This Court has already concluded that Plaintiff has failed to establish a likelihood of success on the merits for two distinct and important threshold reasons.  While Plaintiff is likely to sustain lost sales, which can clearly

16

be remedied by the payment of damages, and potential loss of reputation and goodwill in the marketplace, the Court is not convinced that the scales tip in Plaintiff's favor at this time.

A preliminary injunction would impede Defendants from operating their businesses. *See FORCEL MEDIA*, 2025 WL 1665586 at *4 ("Also problematic is that the requested TRO not only enjoins Defendants from using Forcel's trademarks, but also directs the online marketplace platforms to freeze all accounts connected to Defendants' seller aliases. This relief would greatly interfere with Defendants' business operations and is far too broad, particularly given the number of Defendants in this case and the lack of information about the proportion of non-infringing sales to infringing sales as to each Defendant."). Further, while the Plaintiff in this matter has generally argued that the Defendants in this case are likely to transfer assets to offshore bank accounts outside of this Court's jurisdiction in the absence of an asset freeze, "there isn't a sufficient basis to support [the] 'all-encompassing claim that all of the listed defendants are . . . similarly situated in the context of possible asset transfers.'" *Id.* at *5 (quoting *Tang v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 21-14431, 2022 WL 1664116, at *3 (S.D. Fla. Feb. 28, 2022). In a case where it is possible, if not likely, that this Court lacks jurisdiction over the Defendants and that the 198 Defendants cannot be properly joined, the Court finds that the relief sought by way of the TRO Motion represents the greater of the harms. Accordingly, this factor weighs in favor of denying Plaintiff's request for a TRO.

**Conclusion and Order of Court**

For the reasons discussed above, it is hereby ORDERED as follows:

1)  Plaintiff's Motion (ECF No. 9) seeking a TRO, an order restraining Defendants' assets and storefronts, an order to show cause as to why a preliminary injunction should not issue, and an order authorizing expedited discovery is denied.

2)  Plaintiff's Motion (ECF No. 11) seeking an order permitting Plaintiffs to serve the Defendants via email and online publication is denied without prejudice, pending the Court's consideration of the upcoming briefing anticipated by this Memorandum Order.  Should Plaintiff file another motion seeking to serve a defendant or group of defendants by alternative means, Plaintiff is hereby directed to fulsomely address the Second Circuit's decision in *Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025) via a brief in support of any motion for alternative service, particularly in light of the representation in the Odell Declaration (ECF No. 9-7 at ¶ 3) that each of the Defendants is located in China.

3)  Plaintiff's Motion to Exceed Page Limit (ECF No. 12) is granted.

4)  Plaintiff is hereby ordered to show cause by **June 30, 2026** as to why Plaintiff's claims should not be severed and why every Defendant except for the first-named Defendant, HanRuiZaiShengZiYuan, should not be dismissed from this case for misjoinder without prejudice to Plaintiff pursuing her claims against the dismissed Defendants individually.  In responding to the Court's show cause order, Plaintiff is directed to identify, preferably by a chart organized by Defendant number, which specific Defendants allegedly infringed which of the specific copyrighted works at issue in this

18

case, and to further set forth a specific factual basis for a connection between each of the Defendants.  Failure to respond to the Court's show cause order will result in dismissal of this matter for failure to prosecute.

BY THE COURT:

/s/Robert J. Colville_____
Robert J. Colville
United States District Judge

DATED: June 9, 2026

cc: All counsel of record

19